In re **PORTLAND METRO HEALTH, INC.,** an Oregon Corporation, **Debtor.**

**PORTLAND METRO HEALTH, INC.,** an Oregon Corporation, **Plaintiff,**

v.

**Josephine M. DRISCOLL, Acting Insurance Commissioner for Oregon, Defendant.**

**Bankruptcy No. 381–03236.**
**Adv. No. 81–0558.**

United States Bankruptcy Court, D. Oregon.

Oct. 22, 1981.

Henry Kane, Beaverton Or., for plaintiff.

Kathleen Dahlin, Salem Or., for defendant.

---

FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING DISMISSAL OF CHAPTER 11 PETITION

DONAL D. SULLIVAN, Bankruptcy Judge.

The plaintiff filed a complaint against the Acting Insurance Commissioner for the State of Oregon to determine its eligibility for relief under Chapter 11 of the Bankruptcy Code. Plaintiff contended that it is a "health maintenance organization" and as such is not within 11 U.S.C. § 109(b)(2) and (d), which excludes a "domestic insurance company" from eligibility for relief under the Code. The Insurance Commissioner responded by moving to dismiss the bankruptcy petition. The Court by agreement of the parties accelerated trial of the complaint to October 13, 1981, because of the pendency of state court receivership proceedings and the resulting jurisdictional uncertainty. At the conclusion of the trial, the Court orally announced its decision but reserved the formulation of written findings until later.

I find that for purposes of the Bankruptcy Code the plaintiff is a domestic insurance company within the meaning of 11 U.S.C. § 109(b)(2) and cannot be a debtor under Chapter 7 or Chapter 11 of the Code.

 A debtor's treatment under state law is an important, although not the only guideline to the Bankruptcy Court, in determining whether the exclusions from the Bankruptcy Code in 11 U.S.C. § 109(b) apply under what the authorities call the "state classification test." *1 Collier on Bankruptcy*, § 405[2], at 583–593, (14th Ed. 1974), *Security v. Spurlock*, 65 F.2d 768 (9th Cir. 1933); *Sims v. Fidelity Assurance Company*, 129 F.2d 442 (4th Cir. 1942). Entities excluded from relief under the Bankruptcy Code by the state classification test and by other more flexible tests have the following things in common: (1) They are extensively regulated by well-organized departments of the State and of the United States; (2) they are subject to express statutory procedures for nonbankruptcy liquidation; (3) the nature of their business is public or quasi-public and involve interests other than those of creditors. *In re First American Bank and Trust Co.*, 540 F.2d 343 (8th Cir. 1976). Other nonbankruptcy tests which focus upon the contract between the company and its subscribers, to the exclusion of its contracts with providers of service, describe the primary element of insurance as the "spreading and underwriting of a policyholder's risk." * *Group Life v. Royal Drug Co.*, 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). Under *Sims*, state law classification of the debtor as an insurance company rather than the predominant or any single activity of the debtor, which may include non-insurance activities, is said to be the primary test of insurance and in this respect the *Sim's* rule may be inconsistent with *Jordan v. Group Health*, 107 F.2d 239 (D.C.Cir.1939) and the *American Bank and Trust Company* case, supra. Under all applicable rules, the bankruptcy court must evaluate the state's classification of the debtor as an insurer in the light of the debtor's actual operation.

 The debtor is an insurance company for bankruptcy purposes because it meets the criteria imposed by all of the foregoing rules.

Plaintiff's business affects the interest of the public at large. For this reason, plaintiff is subject to extensive regulation and liquidation as an insurance company by the Insurance Commissioner under ORS 750.055 and ORS Chapter 734, and to regulation as a health maintenance organization by the Federal Department of Health and Human Services under 42 U.S.C. § 300e–11. The state classifies plaintiff as an insurer for regulatory purposes and the debtor holds certificates of authority from both Washington and Oregon to transact an insurance business. The seemingly ambiguous limitation in the characterization of the debtor as an insurer under ORS 750.055(2) does not override the fact that Oregon extensively regulates the debtor as an insurance company for purposes of the tests imposed in the *First American Bank* case. The debtor cannot now contest the Insurance Commissioner's supervisory and liquidation authority because the Washington County Circuit Court has decided this issue adversely to the debtor.

From the standpoint of its subscribers, the debtor acts as an insurer. Portland Metro Health's basic relationship with its subscribers begins with the evaluation and spreading of an individual's risk of incurring medical expenses among a large group. The debtor's subscriber rates are determined based upon a projected risk factor calculated by professionals with the goal of minimizing PMH's exposure to loss. So acute is that concern, that PMH like other insurers also reinsures its excess liability

---

* The Supreme Court in *Royal Drug*, 440 U.S. at 211 n.7, 99 S.Ct. at 1073 n.7, *infra*, referred to the Webster's New International Dictionary of the English Language in defining insurance as "... the act of insuring, or assuring, against loss or damage by a contingent event; a contract whereby, for a stipulated consideration ... one party undertakes to indemnify or guarantee another against loss by a certain specified contingency or peril, called a risk, the contract being set forth in a document called the policy ..."

with another carrier. Plan services in this case are payable on a determinable risk contingency. While some contingencies may be more calculable than others, such as that of preventative physical examination for subscribers, the thrust of the plan is to make medical and surgical services available to subscribers on an "as needed" contingency. The fact that the debtor arranges for medical services by contracting directly with providers rather than by indemnifying subscribers only focuses on the debtor's means of accomplishing its objectives but does not detract from its purpose and character as an insurance company.

The central insurance concept of the underwriting of, and the spreading of risk is not changed by non-insurance or non-traditional features of the debtor's operation which involve provider agreements rather than cash dividends, which spread the risk among all subscribers in a mandatory market comprising a large community, which impose rules on both provider and user to discourage unnecessary utilization of services, and which do not impose a dollar limit upon contractual obligations to subscribers. These differences are variations in methodology rather than departures from the broad concept of insurance. The debtor is a domestic insurance company in the same sense that building and loan companies and trust companies have been held to be banks for purposes of 11 U.S.C. § 109(b)(2).

For the foregoing reasons which shall constitute findings of fact and conclusions of law, the defendant is entitled to a judgment dismissing the petition filed by plaintiff under Chapter 11 of the Bankruptcy Code.