**In the Matter of MICHIGAN MASTER HEALTH PLAN, INC., Debtor.**

**Sheila SOLOMON, Trustee for Michigan Master Health Plan, Inc.**

v.

**ST. JOSEPH'S MERCY HOSPITAL, Defendant.**

**Bankruptcy No. 82–00395–G.
Adv. No. 84–0027–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 12, 1984.

Wallace M. Handler, Birmingham, Mich., for plaintiff.

Robert Maxwell, Bloomfield Hills, Mich., for defendant.

MEMORANDUM AND ORDER TO DISMISS BANKRUPTCY PROCEEDING FOR LACK OF SUBJECT MATTER JURISDICTION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

STATEMENT OF FACTS

Michigan Master Health Plan, Inc., is a health maintenance organization organized and operating under applicable state statutes and regulations of the state of Michigan. The organization provides health care and services to subscribers by physicians, nurses, and other health care professionals.

On January 25, 1982, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Michigan Master Health Plan (Debtor). On January 16,

1984, the trustee commenced an adversary proceeding against St. Joseph Mercy Hospital of Pontiac (Defendant) to recover preferential transfers in the amount of $131,075.52. Defendant has subsequently filed a motion to dismiss for lack of subject matter jurisdiction.

Defendant asserts M.C.L.A. § 333.21027(3) provides for health maintenance organizations to be treated, for liquidation purposes, as insurance companies. Defendant asserts further that 11 U.S.C. § 109(b)(2) excludes insurance companies and their equivalents from being debtors under the Code; the liquidation of the Debtor, therefore, is outside the jurisdiction of the Court.

Notwithstanding the state's treatment of health maintenance organizations for liquidation purposes, Plaintiff contends the statutes under which the Debtor is organized and operates demonstrate the state's intention to distinguish health maintenance organizations from insurance companies.

Section 109(b)(2) of the Bankruptcy Code provides, *inter alia*, that a person may be debtor under Chapter 7 of the title only if such person is not an insurance company. "There appear to be no clear rules for determining whether a particular corporation falls within the definition of [an insurance company]. Two available approaches to the problem have been suggested and used [at] times by the courts: (1) a classification based upon the law of the state of incorporation; and (2) an independent classification by the Bankruptcy Court based upon their own definition of the words of the Bankruptcy Code." *2 Collier on Bankruptcy*, 15th Edition, § 109–13.

Defendant urges the adoption of the "state classification" test and relies on *In re Portland Metro Health*, Inc., 15 B.R. 102 (Bkrtcy.D.Oregon, 1981). The Court in *Portland* applied the state classification test and noted that corporations excluded from the protection of this Court by the application of the test share three common characteristics: (1) extensive regulation by the state and the United States; (2) they are subject to express statutory procedures for nonbankruptcy liquidation; and (3) the nature of the business is public or quasi public and involve interest other than those of creditors. *Id.* at 104.

The exclusion of insurance companies and similar entities goes back to the Bankruptcy Act of 1898.

No reasons for making these exceptions were assigned by the committees of Congress, but they may be surmised to lie in the public or quasi public nature of the business, involving other interests than those of creditors, in the desirability of an unarrested operation, the completeness of state regulation, including provisions for insolvency, and the inappropriateness of the bankruptcy machinery to their affairs. These considerations all apply to insurance corporations.

*Sims v. Fidelity Assur., Ass'n*, 129 F.2d 442, (4th Cir., 1942) at 448, adopting *In re Supreme Lodge of the Masons Annuity*, 286 Fed. 180, 184. "The most natural inference is that Congress meant to leave to local winding-up statutes the liquidation of such companies; that since the state commonly kept supervision over them during their lives, it was reasonable that they should take charge of their demise." *Sims*, 129 F.2d at 449. The cases demonstrate the orderly liquidation of insurance companies was the principal concern of Congress and extensive regulation of certain businesses was a significant factor in excluding them from the Bankruptcy Act. Indeed, the legislative history of § 109 indicates insurance companies are excluded from liquidation under the Code because alternative provisions for their liquidation exist under various regulatory laws of the states. House Report 95–595, 95th Cong., 1st Sess., 318–19 (1977); *See* Senate Report No. 95–989, 95th Cong., 2nd Sess., 31 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Plaintiff asserts, that a state liquidation statute, standing alone, is an insufficient basis on which to determine a business is to be excluded from relief of this Court. *In re Prudence Co.*, 79 F.2d 77 (2nd Cir.,

1939). Plaintiff overlooks a key distinction between *Prudence* and the case at bar.

In *Prudence* a New York statute provided for the liquidation of safe deposit companies and banks to be administered by the superintendent of banks. The debtor argued that by placing the liquidation under the control of a common superintendent the state had determined the businesses were one and the same. In rejecting the argument, the court determined that a more definitive statement by the state was required to form that conclusion. "Even though the state has provided for the supervision and liquidation of safe deposit companies by the superintendent of banks, *it cannot be maintained that the state has classified them as 'banking corporations' with the result of excepting them from the field of bankruptcy...*" 79 F.2d at 79 (emphasis added).

The significance of a definitive statement equating a business with those excluded by the Code was articulated in *In re Cash Currency Exchange Co.*, 37 B.R. 617 (Bkrtcy.D.C.1984). At issue was whether currency exchanges, which were regulated by the state of Illinois under that state's Exchange Act, and banks, incorporated under the Illinois Bank Act, were substantially equivalent to banks and banking institutions listed in § 109(b)(2). The court found that in addition to other differences the statutory liquidation provisions governing exchanges were meager and less comprehensive than similar provisions for banks and banking institutions. The dichotomy in the liquidation provisions "indicate that the state of Illinois does not classify currency exchanges as banking institutions or substantial equivalents." *Id.* at 622. Thus, although differences may exist between two businesses, a state liquidation provision is a sufficient basis to determine that a state equates a business with those excluded under § 109(b)(2). Where the legislature treats a business for purposes of liquidation to be a business which Congress has expressly excluded from the Code, the liquidation of the business is outside the jurisdiction of this Court. *In re Portland, supra.*

"[A] comprehensive liquidation scheme may indicate that the state desires to protect a strong public interest by overseeing the liquidation of a particular entity." *Id.* at 624. Michigan has reviewed the operations of health maintenance organizations and has acted to protect the public interest in liquidation proceedings by equating them with health insurers. In so doing the state views health maintenance organizations and insurers excluded by § 109(b)(2) as substantially equivalent entities. *Id.* at 625.

A legislature is presumed to act with knowledge of the existing laws of the state and of Congress. It explores alternatives to public concerns in the light of existing laws. When the Michigan legislature provided for the liquidation of health maintenance organizations, at least two alternatives were available: enact a separate liquidation statute for health maintenance organizations or equate the treatment of health maintenance organizations in liquidating proceedings to health insurers. The state chose the latter. M.C.L.A. § 333.-21027(3) states in succinct language:

"For purposes of liquidation or receivership, a health maintenance organization shall be treated in the same manner as an insurer ..."

The action by the state, coupled with clear intent of Congress to exclude insurance companies from the Bankruptcy Code, paint a vivid picture of the jurisdiction of the bankruptcy court. Absent from that picture are images of companies which the state has determined are parallel to insurers.

Furthermore, the application of the independent classification test requires "[utilization] of a common-sense approach, guided by the legislative history and rules of statutory construction" *Id.* at 621. As we have noted, the legislative history of § 109 manifest Congress' intention to exclude insurance companies from the Bankruptcy Code. The exclusion is founded on the existence of alternative provision for

their liquidation under the laws of the states. Congress has defined insurers in the context of definitive state liquidation statutes. Michigan, through the language of M.C.L.A. § 333.21027(3) has provided a definitive statement of its treatment of health maintenance organizations and insurers. In our view the state's classification test, as well as the independent classification test, require jurisdiction be denied.

Accordingly, Defendant's motion for dismissal for lack of subject matter jurisdiction should be, and herein is, GRANTED.