**In re GROUPHEALTH PARTNERSHIP, INC., Debtor.**

**Bankruptcy No. 91–16040S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 4, 1992.

Douglas N. Candeub, Adelman Lavine Gold & Levin, Philadelphia, Pa., for debtor.

Michael T. Scott, Philadelphia, Pa., for Hahnemann University.

Robert M. Greenbaum, Silberman, Markovitz & Raslavich, Philadelphia, Pa., for Creditors' Committee.

Ronald E. Chronister, Deputy Ins. Com'r, Sharon E. Harris, Chief Counsel, Pennsylvania Ins. Dept., Harrisburg, Pa.

Leslie B. Hope, Bowser, Weaver & Cousounis, P.C., Philadelphia, Pa., for Cassell A. Moore.

Frederic J. Baker, Sr. Asst. U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before the court is a Motion of Hahnemann University ("Hahnemann") to dismiss this case pursuant to 11 U.S.C. §§ 109(b)(2), (d), on the ground that GROUPHEALTH PARTNERSHIP, INC. ("the Debtor"), a health maintenance organization ("HMO") which transferred all of its members to another HMO prior to its filing, is a "domestic insurance company" ("the Motion"). Finding that this matter was within the realm of insurance law and that regulation of insurers has been, in large part, de-

ferred by Congress to the states, we solicited the views of the Insurance Department of the Commonwealth of Pennsylvania ("the Department") on this issue. The Department's counsel advised us that "given the unique circumstances" of the additional presence in this court of the bankruptcy case of the Debtor's parent, Delaware Valley Health Network, Inc., Bankr. No. 91–16039S ("DVHN"); and the fact that the Debtor no longer has any subscribers, "jurisdiction, ... most appropriately lies with the Bankruptcy Court." In light of the Department's willingness to allow this court to proceed with this case, we shall deny the Motion.

## B. HISTORY OF THE MATTER

The Debtor and DVHN both filed voluntary Chapter 11 bankruptcy cases on November 8, 1991. The relationship between the two entities, as described by the Debtor, was that the Debtor was a signatory to a contract with DVHN, its parent company, whereby DVHN entered into provider agreements with hospitals, physicians, and other health service providers on the Debtor's behalf and then paid the Debtor's bills to the providers, in exchange for a percentage of the premiums paid to the Debtor by its members. DVHN is not regulated by the Department, although the Debtor is regulated by it under the terms of a comprehensive state Health Maintenance Organization Act, 40 P.S. §§ 1551–67 ("the HMOA").

On July 5, 1991, the Department approved the Debtor's transfer of all of its current membership to U.S. Health Care, heretofore one of its competitors. Hahnemann alleges that DVHN and/or the Debtor (all parties are apparently uncertain as to which, or whether both, of the entities are actually liable to providers under the provider agreements) owes in excess of $1 million in unpaid bills both to it and to its various physician practice groups, rendering Hahnemann the Debtor's largest non-insider creditor.

Prior to the filing of the Motion before us, on January 17, 1992, the most significant matter filed in this and the DVHN case was a proceeding, Adversary No. 91–1054S, initiated by both the Debtor and DVHN against the Official Committee of Unsecured Creditors ("the Committee"), as a purported representative of the class of all medical services providers, to prevent all providers from pursuing billing and collection actions against consumer members of the Debtor during the pendency of these bankruptcy cases. The Committee has twice stipulated that provisional injunctions can be entered as prayed for by the Debtor, the most recent being effective through March 9, 1992. This court has expressly reserved ruling on whether these injunctions are binding on providers, who are not named as parties in the proceeding. We have been informed that no providers, including Hahnemann, are presently pursuing the former members of the Debtor. A motion for class certification, presently scheduled for a hearing on March 11, 1992, is opposed by Hahnemann and an individual medical malpractice claimant, Cassell A. Moore ("Moore"). Moore supports Hahnemann's instant Motion.

The Code sections upon which the Motion is based, 11 U.S.C. §§ 109(b)(2), (d), read as follows:

> (b) A person may be a debtor under chapter 7 of this title only if such person is not—

> .   .   .   .   .

> (2) *a domestic insurance company,* bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h); ...

> .   .   .   .   .

> (d) *Only a person that may be a debtor under chapter 7 of this title,* except a stockbroker or a commodity broker, and a railroad *may be a debtor under chapter 11 of this title* (emphasis added).

Based solely upon the wording of these statutes, the principal contention of Hahnemann is that an HMO operates, in effect,

as a domestic health insurance company. It notes that, while the HMOA provides that HMO's are not generally

subject to the laws of this State now in force relating to insurance corporations engaged in the business of insurance nor to any law hereafter enacted relating to the business of insurance under such law specifically and in exact terms applies to such health maintenance organizations,

40 P.S. § 1560(a), it also specifically provides, at 40 P.S. § 1560(b), as follows:

(b) All health maintenance organizations shall be subject to the following insurance laws:

(1) The act of July 22, 1974 (P.L. 589, No. 205), known as the "Unfair Insurance Practices Act."

(2) *Any rehabilitation, liquidation or conservation of a health maintenance organization shall be deemed to be the rehabilitation, liquidation or conservation of an insurance company* and shall be conducted under the supervision of the commissioner pursuant to the law governing the rehabilitation, liquidation, or conservation of insurance companies (emphasis added).

On the other hand, the Debtor emphasizes that the language of 11 U.S.C. § 109(b)(2) does not expressly include HMO's, in contrast to its specific reference to all types of banking institutions. Under the doctrines that (1) the Bankruptcy Code must prevail over ambiguous and even contrary state law; and (2) *expressio unius est exclusio alterius,* "the enumeration of special exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded," *In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 552 (7th Cir. 1985), it argues that § 109(b)(2) excludes HMO's. As to the state law, the Debtor points out that, in 40 P.S. § 1560(a), the Pennsylvania legislature recognized the distinction between HMO's and insurance companies. As to 40 P.S. § 1560(b)(2), the Debtor argues that the language states that HMO's are only "deemed" to be like insurance companies for purposes of liquidation, which it contends would be unnecessary if HMO's actually *were* considered to be insurance companies. The Committee supports the position of the Debtor in its opposition to the Motion.

Each side of the issue cites to impressive authority in its favor. Hahnemann references a recent thoughtful decision of Judge Yacos in *In re Beacon Health, Inc.,* 105 B.R. 178 (Bankr.D.N.H.1989), and an earlier decision consistent therewith, *In re Portland Metro Health, Inc.,* 15 B.R. 102 (Bankr.D.Ore.1981). Both of these decisions resulted in dismissals of cases filed by HMO's operating solely within one particular state on motions by the Insurance Departments of the respective states in which they operated.

The Debtor relies upon five separate similar decisions denying various motions to dismiss a case involving Maxicare, a large national HMO operating in many states, by the Insurance Departments of various states, *In re Family Health Services, Inc.,* 104 B.R. 279 (Bankr.C.D.Cal.1989) (*"Family V"*); *In re Family Health Services, Inc.,* 104 B.R. 268 (Bankr.C.D.Cal.1989); *In re Family Health Services, Inc.,* 101 B.R. 636 (Bankr.C.D.Cal.1989); *In re Family Health Services, Inc.,* 101 B.R. 628 (Bankr.C.D.Cal.1989); and *In re Family Health Services, Inc.,* 101 B.R. 618 (Bankr.C.D.Cal. 1989).

Of particular interest to this court were the decisions in *In re Michigan Master Health Plan, Inc.,* 90 B.R. 274 (E.D.Mich. 1985), *rev'g,* 44 B.R. 642 (Bankr.E.D.Mich. 1984), as this was the only case in which the movant was, like Hahnemann, a creditor, rather than a state insurance department. The *Michigan Master Health* court, referencing a Michigan statute which provided, similarly to 40 P.S. § 1560(b)(2), that HMO's were to be treated, for liquidation purposes, as insurance companies, dismissed the case of an HMO operating solely within that state. The district court, before rendering the only appellate decision in this area, invited the Michigan Insurance Commissioner, who had apparently not previously participated in the matter, to comment on whether the Michigan state law exempted HMO's from the Bankruptcy

Code. Relying almost exclusively on the response that the Commissioner believed that an HMO was not an insurance company under Michigan law, the district court reversed the bankruptcy court's dismissal of the case.

When the interested parties, already armed with substantial Briefs, came before us on the hearing date on the Motion of February 12, 1992, having read the *Michigan Master Health* Opinions, we indicated our intentions to solicit the Department's views on the Motion. No party objected to our doing so, and it appeared to us that no party was quite certain what the Department's formal position on the propriety of our maintaining this case was. We therefore entered an Order of February 13, 1992, stating as follows:

1. The Pennsylvania Insurance Commissioner shall provide a Brief or a Statement to the court addressing the issue of whether she believes that the Debtor is a "domestic insurance company" ineligible to file a bankruptcy case under 11 U.S.C. §§ 109(b)(2), (d), particularly in light of 40 P.S. § 1560(b)(2). *See In re Michigan Master Health Plan, Inc.,* 90 B.R. 274 (E.D.Mich.1985), on or before February 19, 1992.

2. All interested parties are given the opportunity to file supplemental Briefs in support of their respective positions thereafter on or before February 26, 1992.

The Department responded, in a letter signed by both Deputy Insurance Commissioner Ronald E. Chronister and Department Counsel Sharon E. Harris, Esquire, which stated, in pertinent part, as follows:

Although the above-cited section [40 P.S. § 1560(b)(2)] gives the Department the authority to liquidate an insolvent HMO the Department believes that in the case of Grouphealth Partnership, Inc./Delaware Valley Health Network, *the Bankruptcy Court should retain jurisdiction for the following reasons.* Owing to the uniqueness of the situation in which both the subsidiary (GHP), an HMO subject to Insurance Department regulation, and the parent (DVHN) which is not an entity under the Insurance Department's regulatory jurisdiction, are seeking bankruptcy protection, the Department believes the varied issues are most properly and efficiently handled in the current proceeding, under which the Bankruptcy Court would retain jurisdiction over the development and implementation of a plan of reorganization for both entities. Secondly, since there were no HMO subscribers at the time the bankruptcy proceeding was initiated, and virtually all of the subscribers have been paid at this time, the Department sees no advantage to initiation of a liquidation proceeding in which the primary goal is to protect the interests of subscribers and to satisfy their claims. *See* 40 P.S. § 221.1.

The federal court decisions that find HMOs not to be insurers for the purpose of liquidation have recognized that a bankruptcy proceeding is a legally permissible alternative to the liquidation process established by state insurance statutes. (*See, In re Maxicare North Texas, Inc.,* 101 B.R. 618 (Bankr.C.D.Cal. 1989)) [sic]. Also in *In the Matter of Michigan Master Health Plan, Inc.,* 90 B.R. 274 (E.D.Mich.1985), the Court held that the bankruptcy court could assert jurisdiction over an insolvent HMO, notwithstanding the state regulator's statutory authority to liquidate an insolvent HMO. While these decisions are not controlling in this matter, given the unique facts of the GHP/DVHN case, the efficacy of a bankruptcy proceeding appears to best serve all of the parties in interest. Thus, although the Pennsylvania Insurance Department has the statutory authority to liquidate an insolvent HMO, *it is the Insurance Department's position that jurisdiction in this matter, given the unique fact circumstances, most appropriately lies with the Bankruptcy Court* (emphasis added).

In its response of February 26, 1992, to the Department's letter, the Debtor argues that the letter not only supports its position, but also supports its argument that an HMO is not to be considered as a "domestic insurance company" under Pennsylvania

law. Hahnemann, in its February 26, 1992, submission, gamely argues that the Department, in contrast to its Michigan counterpart in *Michigan Master Health Plan, supra,* 90 B.R. at 276–77, does not argue that an HMO is not a "domestic insurance company" for purposes of § 109(b)(2) and that the Department's "policy reasons" for its position are both erroneous and misplaced in determining the correct statutory construction of § 109(b)(2).[1]

## C. DISCUSSION

The *Family Health Services* cases have articulated three "tests" for determining whether a bankruptcy case filed by an HMO should be dismissed under § 109(b)(2): (1) The "independent classification test," which focuses upon the legislative history of § 109(b)(2); (2) The "statutory construction test," which invokes the application of the doctrine of *expressio unius est exclusio alterius;* and (3) the "alternative relief test," which focuses on the policies underlying § 109(b)(2). Judge Yacos adopts these same tests, although reaching opposite conclusions as to whether they should lead to dismissal of the case in issue in *Beacon Health,* 105 B.R. at 179–80.

2 COLLIER ON BANKRUPTCY, ¶ 109.-02, at 109–14 to 109–15 (15th ed. 1991), referencing principally prior authority relating to the exclusion of banking institutions as debtors, articulates the tests for determining whether an entity fits within the exclusion of § 109(b)(2) differently, as follows:

Two available approaches to the problem have been suggested and used at times by the courts: (1) a classification based upon the law of the state of incorporation; and (2) an independent classification by the bankruptcy courts based upon their own definition of the words of the Bankruptcy Code. Although the first mentioned of these approaches, commonly called the "state classification

test," is more favored by the courts, this does not mean that state law is followed literally without regard for the real activities of the corporation, particularly where the corporation has failed to utilize its charter or has developed into a different type of corporation. Nor does the fact that a state may have provided for state supervision and liquidation of a kind of corporation bring such a business into the excepted class.

Generally, in determining whether a corporation falls within the excepted classifications, a bankruptcy court will first look to the state statute under which the corporation has been formed. If that statute denominates the corporation as one which the Code excludes, then the immediate, if not final, inference should be that the corporation is not amenable to status as a debtor under chapter 7. In some cases, however, close examination of the statute is necessary in order to determine whether all corporations which may be formed under it are to be exempt from bankruptcy, courts have accepted this as an indication that the corporation falls within one of the excluded classes. Another consideration often found in the cases is whether the state regulates the corporation and provides special machinery for its liquidation (footnotes omitted).

We find the "tests" articulated by Collier to be more appropriate and more comprehensible than the three-pronged *Family Health Services* tests. Nevertheless, in applying Collier's "state classification test," we begin from the discussion in *Family V,* 104 B.R. at 284–86, of the history of § 109(b)(2) and its predecessors. Originally, the Bankruptcy Act excluded all corporations from filing as debtors, apparently on the theory that such entities are creatures of the state law and hence were appropriately subject to the constraints of the states, without according such "crea-

---

**1.** Unfortunately, Hahnemann also saw fit to submit a "Supplemental Memorandum" replying to the Debtor's Motion on March 3, 1992. Such unsolicited submissions are disfavored, because they often provoke an endless stream of

counter-replies. *See In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr.E.D.Pa.1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333 (E.D.Pa.1988).

tures" the benefits of a bankruptcy. *Id.* at 285. Gradually, the related exclusions have been narrowed to only insurance companies and banks. *Id.*

The primary reason why we believe that these two categories of entities continue to be excluded from filing bankruptcies is the policy that the states generally have specific regulatory procedures regarding, and interests in, such entities. As Collier suggests, the states often provide a "special machinery" for their liquidation, justifying prevention of the federal Bankruptcy Code from tinkering with, and upsetting, this machinery. With respect to insurance regulations, Congress, in the McCarran–Ferguson Act, 15 U.S.C. § 1012, has thusly expressed this policy:

§ 1012. **Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948**

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and that of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

█ Therefore, starting with the "state classification test," we conclude that particular deference must therefore be accorded to state regulatory interests in the business of insurance at the outset of a § 109(b)(2) analysis.

█ It was because we have reached this conclusion that we solicited the views of the Department. As the Debtor does business only in Pennsylvania, we are prepared to give significant deference to the Department's position. Since the Department believes, for practical reasons, that its participation in the liquidation of the Debtor would not represent a prudent use of its resources, and that it is appropriate for this court to perform the function of liquidation of the Debtor, we will accede to those views and proceed to continue to exercise our jurisdiction over this case, as well as that of DVHN.

We do not believe that our decision is inconsistent with any of the prior decisions in this area. The *Beacon Health* and *Portland Metro* cases were dismissed under § 109(b)(2), but at the *request* of state insurance departments. *Michigan Master Health* was not dismissed, on the sole strength of the state insurance department's advice.

As *Beacon Health* points out, 105 B.R. at 182, the *Family Health Services* Medicare cases, involving a "national network of HMOs in over forty states," presented a far different set of problems than those presented by HMO's confined to operation in one state which were in issue in the other cases and as is in issue here. It is difficult to imagine how the *Family Health Services* court *could* have granted the motions of a handful of states which were apparently willing and able to take on the problems of liquidating the Debtor's operations in their states, and then either take on itself or attempt to coax reluctant comparable departments in other states to administer the remainder of the debtors' affairs. By the time that the *Family Health Services* court reached its most difficult case, involving a Wisconsin statutory scheme which was clearly designed to regulate HMO's as insurance companies and a state agency ready and willing to perform the liquidation process in its state, the court had already determined that it could not dismiss the case on the motions of the insurance departments of several other states. A decision, at that point, to dismiss the entire case because Wisconsin would be able and willing to liquidate its portion of

**600**

the Debtor's operations would have bordered on the absurd.

In such cases as *Family Health Services,* involving different states with different interests, the "state classification test" was properly weighed against the federal bankruptcy policy of developing a nationally uniform treatment of debtors, which could easily be frustrated by the introduction of different state agencies and the application of variant states' laws. *Cf. United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); and *United States v. Spears,* 859 F.2d 284, 288–91 (3d Cir.1988).

No such interests are involved in the case of the instant HMO, operating solely in Pennsylvania. However, the sole applicable state agency, the Department, believes that this bankruptcy court is the appropriate forum in which to liquidate the Debtor. It is difficult to do other than accept the Department's advice that we accept jurisdiction of this case as well as that of DVHN.

■ Nevertheless, we do take issue with the Debtor's contention that 40 P.S. § 1560(b)(2) excludes the Debtor from the scope of § 109(b)(2). Rather, we believe that 40 P.S. § 1560(b)(2) places the decision as to whether the Department wishes to exercise its jurisdiction to liquidate an HMO in the hands of the Department. In a case which presents no conflicting federal policies, in contrast to the *Family Health Services* cases, we are prepared to give great deference to the Department's choice of whether to exercise its liquidation procedures or not. That deference requires that we not relegate the Debtor to either the reluctant jurisdiction of the Department or into a no man's land.

**D. CONCLUSION**

We will therefore deny Hahnemann's Motion, and will continue to exercise Bankruptcy Code jurisdiction over this matter, as suggested by the Department.