**EDEN FINANCIAL GROUP, INC., et al., Plaintiffs,**

**v.**

**FIDELITY BANKERS LIFE INS. CO., et al., Defendants.**

**No. 91–487.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 19, 1991.

David F. Peters, John Charles Thomas, Harry M. Johnson, III, Claudia T. Farr, Hunton & Williams, Richmond, Va., for plaintiffs.

Howard W. Dobbins, William H. Schwarzschild, III, Sarah Hopkins Finley, Williams, Mullen, Christian & Dobbins, and Byron L. Woolley, Harold B. Gold, Randolph N. Wisener, Rubinstein & Perry, Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendants' motion to dismiss, abstain, or stay. For the reasons discussed below, the defendants' motion is GRANTED and the case is hereby DISMISSED WITHOUT PREJUDICE.

## FACTUAL BACKGROUND

Fidelity Bankers Life Insurance Co. (FBL) is a Virginia insurance company which was placed in receivership for rehabilitation and conservation on May 13, 1991 by the Circuit Court for the City of Richmond. The State Corporation Commission of Virginia (SCC) was named as Receiver by the court. As Receiver and pursuant to its statutory powers, the SCC (the Receivership Court) is vested with title to all of FBL's assets and has assumed sole and exclusive jurisdiction over all property of FBL and all claims or rights respecting such property.

Pursuant to Va.Code Ann. §§ 38.2–1500–1521, the SCC issued its Order appointing Commissioner Steven Foster as Deputy Receiver, and enjoining all persons from interfering with the rehabilitation process; from the commencement or continued prosecution of all suits and claims against FBL; and the commencement or maintenance of arbitration proceedings against FBL or the Receiver.

FBL and Eden entered into a Marketing Agreement dated April 18, 1986, under which Eden agreed to provide marketing services for 'certain of Fidelity's insurance and investment products. This Agreement provided that Eden would be compensated for the products sold by broker-dealers recruited by Eden in accordance with compensation schedules agreed to by the parties from time to time. Section 8.8 of this contract authorized arbitration of any "irreconcilable difference of opinion or dispute ... between the parties to this Agreement as to the interpretation of this Agreement, or transactions with respect to this Agreement...."

In its complaint, Eden alleges that since entry of the SCC Receivership Order on May 13, 1991, Eden has not been paid by FBL the compensation due Eden under the Marketing Agreement. By a letter dated July 31, 1991, the Special Deputy Receiver rejected Eden's request for payment and disavowed the contracts between Eden and FBL. Eden then requested that the dispute concerning the terms of the Marketing Agreement be submitted to a board of arbitration in accordance with Section 8.8 of the Agreement. Eden was informed that the Deputy Receiver would not accede to Eden's request for arbitration, invoking the SCC Receivership Order as a prohibition.

Eden did not attempt to resolve its claim for arbitration before the Receivership Court. Instead, Eden instituted the present action seeking a declaratory judgment that the application of the SCC Receivership Order and Virginia receivership statutes to preclude Eden from use of its arbitration remedy is preempted by the Federal Arbitration Act and violates the Supremacy Clause of the Constitution.

## ARGUMENT

The defendants make a number of arguments as to why this Court should dismiss the case or abstain or stay from exercising its jurisdiction. Although some of these additional arguments may have merit, it is only necessary to discuss FBL's first argument, that this Court lacks, or should not exercise, jurisdiction over a matter which involves the exercise by the Commonwealth of Virginia of its police power to rehabili-

tate a financially troubled insurer pursuant to a comprehensive regulatory scheme.

## I. INTERFERENCE WITH THE STATE REGULATION OF INSURANCE

### A. *The Federal Arbitration Act*

The Federal Arbitration Act (FAA) requires courts to stay their proceedings if they determine that issues before them are subject to an arbitration agreement, 9 U.S.C. § 3, and it authorizes courts to compel arbitration if there has been a "failure, neglect, or refusal" to comply with an arbitration agreement. *Id.* at § 4. Generally, written arbitration provisions shall be valid and enforceable "save upon such grounds as exist at law or equity for the revocation of any contract." *Id.* at § 2.

It is firmly established that the FAA constitutes "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Decisions within this Circuit are in full accord with this policy. *See, Supak & Sons Mfg. Co. v. Pervel Indus., Inc.*, 593 F.2d 135, 137 (4th Cir.1979) (stating that the FAA "is preemptive of conflicting state laws which restrict the validity or enforceability of arbitration agreements"). Recently, the Fourth Circuit has held that the application of a Virginia statute and administrative ruling to preclude the formation and use of arbitration agreements is in conflict with the FAA and is preempted under the Supremacy Clause. *Saturn Distribution Corp. v. Williams*, 905 F.2d 719 (4th Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 516, 112 L.Ed.2d 527 (1990).

The plaintiffs maintain that the SCC Receivership Order, by prohibiting Eden from exercising its contractual right to arbitration, clearly conflicts with the letter and policy of the FAA. In short, the anti-arbitration provision of the Receivership Order is alleged to be preempted by the FAA and, by virtue of the Supremacy Clause, cannot be applied to deny Eden its contractual right to arbitrate its dispute with FBL.

Whether this contention is correct requires an examination of the peculiarities of insurance regulation and, more specifically, a look at rehabilitation proceedings of financially troubled insurance companies.

### B. *The McCarran–Ferguson Act*

The starting point of any analysis of a dispute relating to an insurance company in receivership is the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, which provides in part:

> No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

*Id.* at § 1012(b). Because Congress has provided that the states are to regulate the business of insurance and have excluded insurance companies from the protection of the federal bankruptcy laws, 11 U.S.C. § 109(b)(2), the defendants maintain that federal courts must defer to state proceedings for the rehabilitation and conservation of insurance companies. In other words, the rehabilitation of insurance companies is a matter of state law and is handled exclusively through proceedings in state court. The SCC maintains that this longstanding rule should be enforced most strictly where a party, as here, brings a lawsuit outside of the receivership forum against an insurer in contravention of an injunction prohibiting such litigation.

### C. *The Business of Insurance*

FBL is in receivership pursuant to Virginia's regulatory scheme. Virginia has enacted comprehensive statutes and rules to regulate the business of insurance, including the conservation and rehabilitation of insurance companies. *See,* Va.Code Ann. §§ 38.2–100–5309. Under Va.Code Ann § 38.2–1508, the SCC as Receiver is vested with title to the property and contracts of FBL for the benefit of its policyholders and creditors. The SCC is also authorized to issue orders, injunctions, and procedures to protect its exclusive jurisdiction over the

receivership estate. The Receivership Order is the blueprint from which the Receiver reconstructs the company. An important aspect of this reconstruction is the injunction against interference with the rehabilitation proceedings which allows the financial condition of the company to be stabilized.

■ A rehabilitation proceeding necessarily implicates the transfer or spreading of policyholders risk and is an integral part of the relationship between insurer and insured. To protect the important state interests involved, the Receivership Court has assumed *in rem* jurisdiction over the assets of FBL and all claims thereto, staying legal proceedings against FBL to allow the Receiver to formulate and implement a viable rehabilitation plan for the protection of FBL's insureds. The creation by statute of a single, exclusive forum for insurance company rehabilitation proceedings is regulation of the "business of insurance" for purposes of the McCarran–Ferguson Act.

A number of courts in other jurisdictions have reached the same conclusion.[1] For instance, in *Washburn v. Corcoran*, 643 F.Supp. 554 (S.D.N.Y.1986), a case which addressed the single forum issue in the context of a demand to compel arbitration against troubled insurers under the FAA, the court noted that all proceedings against the insurer must be unified under the "single management of one court." *Id.* at 556. The court stated that:

> federal courts have long held that state laws protecting or regulating the relationship between the insurance company and the policyholder, either directly or indirectly, like laws providing for the rehabilitation, liquidation or dissolution of insurance companies are 'laws regulating the business of insurance.'

*Id.*

■ Eden argues correctly that the exclusive regulatory jurisdiction of the states over insurance companies applies only to the "business of insurance," not to the regulation of the "business of insurers."

*See, Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). In *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982), the Supreme Court identified three factors for determining whether a practice is the "business of insurance" for purposes of the McCarran–Ferguson Act:

> *[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.

The plaintiffs maintain that under Fourth Circuit law, state receivership statutes and proceedings do not constitute the "business of insurance" under the three factor test of *Pireno*. In *Gordon v. United States Dept of Treasury*, 846 F.2d 272 (4th Cir.1988), *cert. denied*, 488 U.S. 954, 109 S.Ct. 390, 102 L.Ed.2d 379 (1988), the Fourth Circuit addressed the conflict between the claim of the United States to priority in the context of the *liquidation* of an insurance company and the priority scheme established by the receivership statutes of Maryland. Focusing on the first factor of the *Pireno* test (spreading the policyholder risk), the court concluded:

> Maryland's regulation of the liquidation process of insurance companies, while perhaps the regulation of the business of insurers, was not the regulation of the 'business of insurance' within the meaning of McCarran–Ferguson.

*Id.* at 273–74.

The holding in *Gordon* is that a federal insolvency statute supersedes a state's liquidation priority statute to give the Department of Treasury a priority over other creditors of an insolvent insurer in a liquidation context. Eden argues that *Gordon* applies to state receivership proceedings generally and that there is no significant difference between the liquidation in *Gor-*

---

1. *See, Anshutz v. J. Ray McDermott Co.*, 642 F.2d 94, 95 (5th Cir.1981); *Washburn v. Corcoran*, 643 F.Supp. 554, 556 (S.D.N.Y.1986); *see also*, *Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir. 1980).

*don* and the rehabilitation and conservation proceedings in this case. The Court disagrees.

In *Gordon,* the federal insolvency statute was directly at odds with Maryland's creditor priority scheme. In such instances, the Supremacy Clause dictates that federal law should prevail. However, in this case, the potential conflict between Virginia's scheme for regulating insurers and the FAA is not nearly so direct. Along with other claims and causes of action, the Receivership Order merely stays the commencement or maintenance of arbitration so that the Receiver can get some "breathing room" in order to implement a viable rehabilitation plan. It is not likely that Congress, by enacting the FAA, intended to undermine a state's ability to administer the important state function of insurance regulation.

Eden's argument is also flawed because it ignores the important distinctions between a liquidation and a rehabilitation. First, by its express terms, the holding in *Gordon* only applies to liquidation proceedings, *Id.* at 273, and, in fact, the district court expressly noted that "[t]he question of whether other portions of the Maryland Insurance Code regulate the 'business of insurance'" is not before the court. *Gordon v. U.S. Dept. of Treasury,* 668 F.Supp. 483, 486–87 n. 4 (D.Md.1987). Secondly, the only court which has addressed the issue of whether state receivership proceedings in a rehabilitation context are the business of insurance has squarely held in the affirmative. *See, Baldwin–United Corp. v. Garner,* 283 Ark. 385, 678 S.W.2d 754 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).

■ Lastly and most importantly, there are fundamental distinctions between the purpose of a liquidation and the purpose of a rehabilitation. The goal of rehabilitation is to continue the relationship between the insurer and insured by protecting the insureds' interests during financially impaired times of the insurer. The Supreme

Court has noted this important relationship. *Group Life & Health Insurance v. Royal Drug Co.,* 440 U.S. 205, 215–16, 99 S.Ct. 1067, 1075–76, 59 L.Ed.2d 261; *Securities and Exchange Commission v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). A rehabilitation proceeding modifies and monitors the operation of an insurer consistent with the interests of policyholders. The insurer in rehabilitation continues to keep policies in force, pay claims, renew policies, accept premiums and, in short, do everything that insurance companies do.

A liquidation proceeding, on the other hand, adjudicates competing rights of creditors to insufficient assets. At the end of the liquidation, the insurer ceases to exist, and thus there is no continuing relationship between the insurer and the insured to protect. Therefore, while fixing claim priorities in the liquidation context may be the business of insurers, rehabilitation proceedings necessarily are the business of insurance, as that term has been defined under *Pireno.*

## CONCLUSION

■ The McCarran–Ferguson Act bars interference with state laws regulating the business of insurance, unless such laws specifically relate to insurance. Because the FAA does not specifically relate to the business of insurance, an insurance company in state rehabilitation and conservation proceedings, such as FBL finds itself, is excepted from the provisions of the FAA where a party attempts to invoke arbitration against the company or its receiver.[2]

On a practical level, this ruling makes great sense. The issue before the Court is whether the Federal Arbitration Act can or should compel the state appointed regulator of a troubled insurer to arbitrate a creditor's dispute when such arbitration was expressly enjoined in the Order appointing the Receiver. Granting the relief sought by Eden would create the very real threat that control of FBL's rehabilitation

---

**2.** A number of courts have so held. *See, e.g., Washburn v. Corcoran,* 643 F.Supp. 554 (S.D.N.Y.1986); *In re Liquidation of Union In-* *demnity Co.,* 137 Misc.2d 575, 521 N.Y.S.2d 617 (Sup.Ct.1987).

would fall out of the hands of the proper Virginia authorities. This result is at odds with the purposes of the McCarran–Ferguson Act.

Moreover, the salutary purposes of state insurance receiverships, of treating all policyholders fairly and ratably, would be circumvented if Eden is allowed to have its claim against FBL adjudicated in a manner inconsistent with other claimants' and policyholders' claims. The very purpose of the Receivership Order's injunction is to protect FBL and its assets from the disruptive assertion of conflicting claims of policyholders and creditors. If the Receiver is embroiled in piecemeal litigation and dispute resolution involving claims representing only a fraction of potential policyholder obligations, legal expenses increase dramatically and the estate decreases correspondingly. Management time is drained, and inconsistent decisions and outcomes will likely occur. Such consequences jeopardize the Receiver's efforts to design and implement a viable rehabilitation plan for FBL in a manner that is in the best interests of all parties concerned.

There are over 171,000 policyholders and annuitants of FBL, residing in forty-nine states and the District of Columbia. Eden's alleged injury is just a small drop in the ocean that comprises the FBL estate. Much like an automatic stay in bankruptcy, the Receivership Order stays all claims against the Receiver until they all can be adjudicated in an efficient and orderly way. This provides a sense of stability and fairness to what would otherwise be an extremely confusing situation.

Eden, of course, is by no means foreclosed in pursuing its claim in state court. At the time it was denied payment, Eden had the right and continues to have the option to present a formal proof of claim to the SCC and, if there is an adverse decision in that forum, to appeal that ruling to the Virginia Supreme Court and, if necessary, to the Supreme Court of the United States.

In sum, this Court declines to exercise jurisdiction over this case because under the McCarran–Ferguson Act, federal courts must defer to the exclusive jurisdiction of state proceedings over the rehabilitation of insurance companies. Notwithstanding the congressional declaration of a liberal federal policy favoring arbitration agreements as embodied by the FAA, when demands for arbitration are stayed along with all other types of claims and causes of action in an insurance rehabilitation proceeding, the provisions of the FAA must give way to the mandates and policy of the McCarran–Ferguson Act and accompanying state regulations.