In the Matter of ESTATE OF MEDCARE HMO, Debtor–Appellant.

No. 92–3988.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1993.

Decided June 30, 1993.

Barry B. Gross (argued), C. Yunkis, Cary E. Dunham, Shefsky & Froelich, William F. Dolan, Bickel & Brewer, Chicago, IL, for appellees.

Geoffrey Slaughter, James A. Stempel, Kirkland & Ellis, Pamela S. Hollis, Donald E. Johnson (argued), Kimberly M. Centella, Hollis & Johnson, Chicago, IL, for debtor-appellant.

James H.M. Sprayregen, Geoffrey Slaughter, James A. Stempel, Kirkland & Ellis, Chicago, IL, for amicus curiae Columbus–Cabrini Medical Center and Galen Hosp. Illinois, Inc. dba Humana Hospital—Michael Reese.

Mary Kay McCalla, Wm. Carlisle Herbert, Hopkins & Sutter, Chicago, IL, for amicus curiae Illinois Health Maintenance Organization Guaranty Assn.

William F. Dolan, Chicago, IL, for amicus curiae Loyola University of Chicago.

Before BAUER, Chief Judge, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The issue in this appeal is whether a health maintenance organization (HMO) is a "domestic insurance company" and thus cannot be a debtor under the Bankruptcy Code pursuant to 11 U.S.C. § 109(b)(2) (1988). The district court held that HMOs are insurance companies under Illinois law and dismissed Medcare's petition for chapter 11 relief for lack of subject matter jurisdiction. We affirm.

I.

Medcare is a not-for-profit Illinois corporation licensed and operating since 1985 as an HMO under the Illinois Health Maintenance Organization Act, 215 ILCS 125/1 *et seq.* (1992) (HMO Act). Its approximately 54,000

enrollees pay a fixed monthly premium, for which Medcare agrees to arrange or provide various corrective and preventative health care services. Medcare, in turn, contracts with thirty-nine independent physician associations (IPAs) and various hospitals for the provision of health care services. It pays a flat monthly fee for each enrollee assigned to each IPA, and a set *per diem* fee to cover all in-patient hospital costs. Medcare also provides direct care at four clinics staffed by approximately fifteen physicians and twenty nurses.

On June 3, 1992, Medcare filed a voluntary petition for chapter 11 reorganization. The Illinois Director of Insurance (Director) was granted leave to intervene by the bankruptcy court and moved to dismiss the petition because, he argued, Medcare is an insurance company under section 109(b)(2) of the Bankruptcy Code and thus ineligible to be a debtor for purposes of federal bankruptcy relief. After three days of testimony, however, the bankruptcy court ruled orally that Medcare is not an insurance company. It found that under Illinois law, an HMO can be licensed under either the HMO Act or the Illinois Insurance Code, 215 ILCS 5/1 *et seq.* (1992), and only those licensed under the Insurance Code can sell simple indemnification insurance. Relying on this distinction, the bankruptcy court held that Illinois does not classify all HMOs as insurance companies, but only those licensed under the Insurance Code. Because Medcare is not licensed under the Insurance Code and cannot sell simple indemnification insurance, the court concluded that Medcare is not a "domestic insurance company" for purposes of section 109(b)(2). It also determined that the essential function of an HMO is the delivery of health care services and that, although this is accomplished through indemnification, the indemnification aspect is incidental to the delivery of care.

The Director was granted leave to file an interlocutory appeal pursuant to 28 U.S.C. § 158(a), and the district court reversed. It held that, although section 109(b)(2) does not expressly exclude HMOs from bankruptcy relief, Illinois law classifies HMOs as insurance companies for purposes of liquidation or rehabilitation, and hence Medcare cannot be a debtor under the Code. *Selcke v. Medcare HMO,* 147 B.R. 895 (N.D.Ill.1992).

## II.

Whether an entity is excluded from the protection of the Bankruptcy Code is a question of law, which we review *de novo.* See *In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 548 (7th Cir.), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). Section 109(b)(2) of the Code excludes certain entities from being debtors eligible for bankruptcy relief. It provides:

> (b) A person may be a debtor under chapter 7 of this title only if such person is not—
>
> .    .    .    .    .
>
> (2) a domestic insurance company....

Under section 109(d), only those eligible for relief under chapter 7 are eligible for relief under chapter 11.

In *In re Cash Currency Exchange,* we noted that there were two tests that courts have applied for determining whether an entity is excluded pursuant to section 109(b)(2). The first was the state classification test, which looks to the entity's classification under the law of the state in which the entity is incorporated. We indicated that an entity could be excluded under the state classification test in one of two ways:

> If state law classifies the entity as one that is specifically excluded from being a debtor under section 109(b)(2), the inquiry generally ends there. If state law does not so classify the entity, the question becomes whether the entity is the substantial equivalent of those in the excluded class.

*Id.* at 548. The second test courts have employed, we noted, was the independent classification test. Under this test, a court would look to the language of section 109 itself and construe its provisions using techniques of statutory construction. *Id.* at 551–52.

In *Cash Currency,* we applied both tests to conclude that a currency exchange was not an excluded entity under section 109(b)(2), and thus was eligible for relief under the

Code. We first applied the state classification test and determined that under Illinois law currency exchanges were not classified as, nor were they the substantial equivalent of, an excluded entity—in that case, a bank. We then applied the independent classification test and found that currency exchanges were not expressly excluded under section 109(b)(2).

After our decision in *Cash Currency*, another test was devised for classifying entities under section 109(b)(2). In *In re Republic Trust & Savings Co.*, 59 B.R. 606, 614 (Bankr.N.D.Okla.1986), the bankruptcy court suggested the "alternative relief test," which emphasizes "congressional intent and factors of practicality and policy" to determine whether, given a state reorganization and liquidation scheme to wind up a particular entity, federal bankruptcy relief would nonetheless be a satisfactory alternative to the state procedure.

The district court in the present case applied the state and independent classification tests and found that each yielded a different conclusion. The court invoked the independent test and concluded that, because HMOs are not expressly excluded in section 109(b)(2), Congress intended HMOs to be debtors under the Code. Applying the state classification test, however, the district court held that Illinois law classifies HMOs as domestic insurance companies, subjecting them to the liquidation and rehabilitation procedures for insurance companies under state law. Moreover, the court buttressed this conclusion by finding HMOs to be the substantial equivalents of domestic insurance companies under Illinois law because they share the essential attribute of insurance companies: risk pooling and indemnification. The district court then impliedly gave precedence to the state classification test and ruled that Medcare is a domestic insurance company.

Medcare contends that the district court mistakenly held the state classification test to be determinative. It asserts that, given the supremacy of federal law and the need for a uniform interpretation of section 109, the independent test should take precedence over the state test. Medcare also argues that, even if the state classification test is controlling, the district court erred in holding that HMOs are necessarily domestic insurance companies under Illinois law.

### A.

Courts faced with the issue whether an HMO is an excluded entity under section 109(b)(2) have applied the three tests somewhat erratically. Some courts have relied solely on the state classification test to determine whether an HMO is an insurance company. *See In re Michigan Master Health Plan, Inc.*, 90 B.R. 274 (E.D.Mich.1985) (relying solely on opinion of Michigan Attorney General that HMO was not insurance company), *rev'g*, 44 B.R. 642 (Bankr.E.D.Mich.1984) (finding HMO to be insurance company under both state and independent test); *In re Portland Metro Health, Inc.*, 15 B.R. 102 (Bankr.D.Or.1981) (HMO held insurance company under Oregon law). Others have applied both the state and independent classification tests with some even utilizing the alternative relief test for good measure. Of these courts, some have placed primary emphasis on the state classification test, *see In re Grouphealth Partnership, Inc.*, 137 B.R. 593 (Bankr.E.D.Pa.1992) (HMO not insurance company under Pennsylvania law given opinion of Pennsylvania Insurance Commission); others have relied principally on the independent test, *see In re Family Health Servs., Inc.*, 101 B.R. 618 (Bankr.C.D.Cal. 1989) (Texas affiliate of national HMO network not insurance company) and consolidated cases;[1] while another did not specify

---

1. The consolidated cases involved 48 affiliates of a national network of HMOs known as the Maxicare network. In each case, the bankruptcy court applied the independent classification test, the state classification test and the alternative relief test to conclude that the HMO affiliate was not excluded under section 109(b)(2). *See In re Family Health Servs., Inc.*, 101 B.R. 628 (Bankr.

C.D.Cal.1989) (Arizona affiliate); *In re Family Health Servs., Inc.*, 101 B.R. 636 (Bankr.C.D.Cal. 1989) (Louisiana affiliate); *In re Family Health Servs., Inc.*, 104 B.R. 268 (Bankr.C.D.Cal.1989) (Midwest affiliate incorporated in Illinois and doing business in Illinois, Indiana and Ohio); *In re Family Health Servs., Inc.*, 104 B.R. 279 (Bankr.C.D.Cal.1989) (Wisconsin affiliate). The

upon which test it ultimately relied, *see In re Beacon Health, Inc.*, 105 B.R. 178 (Bankr. D.N.H.1989) (applying independent test, state classification test (New Hampshire law) and alternative relief test and concluding without elaboration that HMO was insurance company for purposes of section 109). Given this somewhat unpredictable state of the law and the inherent confusion in having three distinct tests for interpreting eligibility for Bankruptcy Code relief, we are compelled to review anew the proper analysis for determining eligibility under section 109(b)(2).

### B.

When interpreting the Bankruptcy Code, as with any other statute, a court must look first to the statutory language. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Section 109(b)(2) excludes a list of entities from federal bankruptcy relief, including domestic insurance companies.[2] The list does not include HMOs. Medcare suggests that, under general principles of statutory construction, the failure to include HMOs among those excluded from being a debtor under the Code evidences Congress's intent to offer federal bankruptcy relief to HMOs. This conclusion is bolstered, it submits, by the fact that Congress has amended section 109 on two occasions since enacting the Federal HMO Act, 42 U.S.C. § 300e (1988). Consequently, Congress was well aware of HMOs and yet failed to exclude them from debtor status. This arguably indicated an intent to offer bankruptcy protection to HMOs.

The flaw in Medcare's argument, however, is in presuming that HMOs are not domestic insurance companies and are therefore not in an excluded category of section 109(b)(2). Medcare suggests that the distinction between a domestic insurance company and an

HMO is apparent but cannot point to any Code provision that would support this thesis. Thus, Medcare asks us, under the guise of applying the independent classification test, in effect, to create a federal common-law definitional scheme for categorizing section 109(b)(2) entities. We believe, however, that to attempt this would only frustrate the intent of Congress.

It has been accepted for a long time that, in defining categories excluded from federal bankruptcy protection, courts are to look to the law of the state of incorporation of the entity in question. In *Security Building & Loan Association v. Spurlock*, 65 F.2d 768 (9th Cir.), cert. denied, 290 U.S. 678, 54 S.Ct. 102, 78 L.Ed. 585 (1933), for example, the Ninth Circuit was faced with determining whether an entity, given a newly enacted amendment excluding building and loan associations, was eligible for protection under the Bankruptcy Act. The court held that Congress intended state law to define the nature of entities to be excluded:

> It follows that when Congress enacted this legislation without any attempt to define the characteristics of the building and loan associations intended to be excluded from the operation of the Bankruptcy Act, it necessarily recognized the various definitions thereof in the statutes of the several states as indicating what constitutes a building and loan association in the respective states. To attempt by judicial construction to incorporate into the federal law some definition of a building and loan association would be in effect to legislate upon that subject. Congress was satisfied to take the state statutes as they found them and we must do so.

*Id.* at 771. Applying state law to classify entities to be excluded from the protection of the bankruptcy laws has been the consistent

---

force of these decisions has been blunted by *In re Family Health Services, Inc.*, 143 B.R. 232 (C.D.Cal.1992), where the district court on appeal reversed the bankruptcy court decision involving the Wisconsin affiliate, concluding, under the state classification test, that the HMO was an insurance company under Wisconsin law.

**2.** Section 109(b)(2) excludes from the Code any entity classified as:

a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h));

. . . .

practice with respect to insurance companies[3] as well as banks.[4]

Congress seems to have been content with the practice of looking to state law for the definition of excluded categories. Congress has not sought to provide its own definitions of categories excluded from bankruptcy protection. Of course, if Congress were to provide definitions that were in conflict with state law, federal law would govern. *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929). But, when Congress has not provided an explicit alternative to state law, we are mindful that the Bankruptcy Code was written in the shadow of state law and conclude that Congress intended state law to fill the interstices. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re Roach*, 824 F.2d 1370, 1373–74 (3d Cir.1987). This conclusion is particularly sound in classifying and defining entities listed in section 109(b)(2), for these entities are excluded precisely because of their subjection to state regulation. *Sims*, 129 F.2d at 448; *Union Guarantee*, 75 F.2d at 984 ("since the states commonly kept supervision over [these entities] during their lives, it was reasonable that they should take charge on their demise."); *see also* S.Rep. 95–989, 95th Cong., 2d Sess., 31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5817. Indeed, Congress has codified its policy of leaving the regulation of the "business of insurance" to the states in the McCarran–Ferguson Act, 15 U.S.C. § 1011–15.[5]

**3.** *See Sims v. Fidelity Assurance Ass'n*, 129 F.2d 442, 449–51 & n. 3 (4th Cir.1942) (corporation dealing in annuities an "insurance company" under West Virginia law), *aff'd on other grounds*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943); *Republic Underwriters v. Ford*, 100 F.2d 511, 514 (5th Cir.1938) (unincorporated interinsurance association held insurance company under Texas law); *In re Union Guarantee & Mortgage Co.*, 75 F.2d 984 (2d Cir.) (mortgage company an "insurance company" under New York law), *cert. denied*, 296 U.S. 594, 56 S.Ct. 142, 80 L.Ed. 421 (1935).

**4.** *See First Am. Bank & Trust Co. v. George*, 540 F.2d 343 (8th Cir.) (trust company a "banking corporation" under North Dakota law), *cert. denied*, 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976); *In re Prudence Co.*, 79 F.2d 77 (2d Cir.) (mortgage lender not "banking corporation" or "insurance company" under New York law), *cert. denied*, 296 U.S. 646, 56 S.Ct. 247, 80 L.Ed. 459 (1935); *Woolsey v. Security Trust Co.*, 74 F.2d 334, 335 (5th Cir.1935) (trust company a "banking corporation" under Texas law); *Kansas ex rel. Boynton v. Hayes*, 62 F.2d 597, 599 (10th Cir.1932) (trust company a "banking corporation" under Kansas law); *Gamble v. Daniel*, 39 F.2d 447, 451 (8th Cir.) (trust company not "banking corporation" under Nebraska law), *cert. denied*, 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752 (1930); *see generally*, Scott Jennings, Annotation, *Exclusion from Debtor Status of Banks and the Like by § 109(b)(2) of Bankruptcy Code 11 U.S.C. § 109(b)(2)*, 87 A.L.R. Fed. 282 (1988).

**5.** The McCarran–Ferguson Act provides:

**§ 1011. Declaration of policy**
Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

**§ 1012. Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948**
(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, [the antitrust laws] shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

In *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Supreme Court held that the McCarran–Ferguson Act did not exempt from the antitrust laws the conduct of an insurance company in contracting with a pharmacy for a reduced price for the provision of prescription drugs. The Court concluded that the agreements between the insurer and the pharmacies were not the "business of insurance" under the McCarran–Ferguson Act. The Supreme Court has recently held, however, that the liquidation and rehabilitation of insurance companies is "integrally related to the performance of insurance contracts after bankruptcy," and thus is regulation of the "business of insurance." *United States Dep't of Treasury v. Fabe*, — U.S. —, —, 113 S.Ct. 2202, 2203, 124 L.Ed.2d 449 (1993) (under McCarran–Ferguson Act, Ohio priority scheme giving priority to policyholders over the United States government not pre-empted by conflicting federal priority statute); *see also An-*

Consequently, in the light of Congress's acquiescence in classifying the categories in section 109(b)(2) according to state law (and Congress's express policy of reserving the regulation of insurance to the states), it is appropriate to look primarily to state law for the meaning of "domestic insurance companies" rather than to attempt a federal definition by developing a federal common law around the very general language of the Code.

However, after determining the nature of the entity under state law, a court must nonetheless ensure that the classification would not "frustrate[ ] the full effectiveness [of the Code]." *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971); *see also California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (state law pre-empted if it "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1963))). Thus, courts applying state law have not followed the state classification blindly, but have reviewed the characteristics of the entity to ensure that the state classification is consistent with congressional intent. As the Eighth Circuit stated in *First American:* "The utilization of the incorporating state's classification of the corporation does not mean that state law will be followed literally without regard to an assessment of the actual operation of the petitioning corporation." 540 F.2d at 346; *see also* 2 Lawrence P. King, Collier on Bankruptcy ¶ 109.02 (15th ed. 1985). Such an analysis of the "actual operation" of the entity and the impact of the state classification on the objectives of the Code is similar in many respects to the present application of the independent classification and the alternative relief tests, for this analysis looks past state law to determine whether an exclusion is consistent with the policy of the federal bankruptcy law.

In essence, then, there should not really be three separate tests for ascertaining whether an entity is excluded from the protection of the Bankruptcy Code. Rather, absent express classification under section 109 or some other federal statute, the classification of an entity should generally follow the law of the state of its incorporation, so long as that classification does not frustrate the purposes of the Code. Not surprisingly, this approach parallels that generally applied in bankruptcy in dealing with other matters traditionally left to state law. *See Butner,* 440 U.S. at 54–55, 99 S.Ct. at 917–18 (property rights defined by state law unless Congress exercises power to fashion new law or state law conflicts with federal interest).

### III.

#### A.

Accordingly, we begin our inquiry by determining whether Illinois classifies HMOs as insurance companies for purposes of section 109(b)(2). We conclude that it does. Section 5–3(b)(2) of the HMO Act provides:

(b) For purposes of the Illinois Insurance Code, except for Articles XIII and XIII½ [dealing with liquidation and rehabilitation], Health Maintenance Organizations in the following categories are deemed to be "domestic companies":

. . . . .

(2) a corporation organized under the laws of this State; . . . .

Since Medcare is a corporation organized under the laws of Illinois, it is a "domestic company" for purposes of the Insurance Code. The Insurance Code defines a "domestic company" as "a company incorporated or organized under the laws of this State," and defines a "company" as "an insurance or surety company." 215 ILCS 5/2(e) & (f).

More telling, in our view, is how Illinois classifies HMOs for purposes of liquidation

---

*shutz v. J. Ray McDermott Co.,* 642 F.2d 94, 95 (5th Cir.1981); *Eden Fin. Group v. Fidelity Bankers Life Ins.,* 778 F.Supp. 278, 281 (E.D.Va.1991). In any event, the exclusion in section 109(b)(2) is in some respects broader than the exemption under the McCarran–Ferguson Act. For section

109(b)(2) not only excludes from federal regulation state regulation with respect to a company's particular *conduct* dealing with the "business of insurance," but it excludes from one aspect of federal regulation, i.e., the Bankruptcy Code, the *company,* in general.

or rehabilitation. Again, Illinois law is explicit. Section 5–6(a) of the HMO Act classifies HMOs as insurance companies subject to the liquidation and rehabilitation procedures found in the Insurance Code:

> For purposes of the rehabilitation, liquidation or conservation of a health maintenance organization, the operation of a health maintenance organization in this State constitutes a form of insurance protection which should be governed by the same provisions governing the rehabilitation, liquidation or conservation of insurance companies. Any rehabilitation, liquidation or conservation of a Health Maintenance Organization shall be based upon the grounds set forth in and subject to the provisions of the laws of this State regarding the rehabilitation, liquidation, or conservation of an insurance company and shall be conducted under the supervision of the Director.... For purpose of determining the priority of distribution of general assets, claims of enrollees and enrollees' beneficiaries shall have the same priority as established by Section 205 of the Illinois Insurance Code for policyholders and beneficiaries of insureds of insurance companies. If an enrollee is liable to any provider for services provided pursuant to and covered by the health care plan, that liability shall have the status of an enrollee claim for distribution of general assets.[6]

Of course, the existence of a state scheme for liquidation or rehabilitation of a debtor is not alone sufficient to conclude that the entity in question is one excluded under section 109(b)(2). *Cash Currency*, 762 F.2d at 551; *In re Prudence*, 79 F.2d at 79. The provision quoted above, however, does more than subject HMOs to a state liquidation and rehabilitation scheme. First, it classifies the operation of an HMO, at least for purposes of liquidation and rehabilitation, as a form of insurance protection. Second, the provision not only subjects HMOs to a state liquidation and rehabilitation scheme, but it includes them in the very scheme created for insurance companies and requires that the liquidation or rehabilitation be conducted under the supervision of the Director. Third, the provision highlights the priority given to enrollee claims. Such protection is routinely conferred by states in the case of entities excluded under section 109(b)(2) in order to safeguard consumers dealing with these highly regulated entities. *Cash Currency*, 762 F.2d at 551; cf. *Fabe*, —— U.S. at ——, 113 S.Ct. at 2208–2210. We find the above-quoted provisions powerful evidence that Illinois has classified HMOs as insurance companies, thereby excluding them under section 109(b)(2) from federal bankruptcy protection.

Medcare attempts to rebut this explicit classification by emphasizing the differences between insurance companies and HMOs under Illinois law. It directs us to provisions of the HMO Act defining an organization as either an HMO *or* an insurance company. *See, e.g.*, 215 ILCS 125/1–2(11). Moreover, Medcare notes that under Illinois law, a corporation may be certified as an insurance company, an HMO or both. Thus, while an HMO *may be* an insurance company, Medcare contends that *not all* HMOs are necessarily insurance companies. Medcare submits that only those HMOs licensed under the Insurance Code, and not those simply licensed under the HMO Act, are classified as insurance companies. Because Medcare

---

**6.** Section 5–6(b)(ii) of the HMO Act also provides:

> (b) For purposes of Articles XIII and XIII½ of the Illinois Insurance Code [dealing with liquidation and rehabilitation], organizations in the following categories shall be deemed to be a "domestic company" and a "domiciliary company":

> (ii) a corporation organized under the laws of this State;

As noted in the preceding discussion, the Insurance Code defines "domestic company" as an "insurance or surety company." 215 ILCS 5/2(e) & (f).

is not licensed as an insurance company and thus cannot underwrite pure indemnity insurance, it insists that it is not an insurance company under Illinois law.

We disagree. Two entities need not be identical to be classified together for a particular purpose. The fact that Medcare cannot sell pure indemnity insurance in no way suggests that it is not an insurance company for purposes of the Bankruptcy Code.[7] Not all insurance companies are permitted to sell every conceivable type of insurance. 215 ILCS 5/4, 5/5. For example, a health insurer such as Blue Cross and Blue Shield may not insure against the risk of fire. Further, if we were to adopt Medcare's position, an HMO's eligibility to become a debtor under the Code would be dependent solely upon whether it was licensed under the Insurance Code or under the HMO Act. This so-called "bright-line" distinction urged by Medcare, however, is wholly inconsistent with the above-quoted provision of the HMO Act subjecting *all* HMOs to the liquidation and rehabilitation provisions of the Insurance Code. 215 ILCS 125/5–6(a). Moreover, Medcare's view is in tension with Article VI of the HMO Act creating the HMO Guaranty Association and the HMO Guaranty Fund, which protect enrollees in the event of insolvency. 215 ILCS 125/6–1 *et seq.* For example, Article VI of the HMO Act specifies that the Director, who regulates both traditional insurance companies and HMOs in Illinois, must be appointed the liquidator or rehabilitator of any HMO participating in a liquidation or rehabilitation proceeding. 215 ILCS 125/6–11(d). As rehabilitator or liquidator, the Director is given the responsibility of conducting the business of the company or, in the alternative, proceeding to liquidation. *See* 215 ILCS 5/192 (duties of rehabilitator); 215 ILCS 5/193 (duties of liquidator). In addition, the HMO Guaranty Association has powers and duties looking toward the resuscitation of the impaired or insolvent HMO. 215 ILCS 125/6–8. In particular, the Guaranty Association is responsible for maintaining the HMO Guaranty Fund, which is used to guarantee the payment of benefits and the provision of coverage to the enrollees of the impaired HMO. 215 ILCS 125/6–6.

Finally, the "bright-line" approach suggested by Medcare would not only be baldly inconsistent with numerous provisions of Illinois law enacted for the protection of enrollees but would also classify the rights of enrollees according to the provision under which their HMO was licensed. Whether an HMO is licensed under the HMO Act or the Insurance Code, however, is without consequence to the services the HMO provides its enrollees. Classifying for bankruptcy purposes only those HMOs licensed under the Insurance Code as "domestic insurance companies" would arbitrarily deny many enrollees the protections of Illinois law. Such a classification would be particularly egregious given that many enrollees have no choice in the selection of their HMO. We strongly doubt that the state of Illinois intended such an artificial distinction.

■ Although we could end the state law inquiry with the preceding discussion, *Cash Currency,* 762 F.2d at 548, we also find that HMOs are the substantial equivalents of insurance companies under Illinois law. As we stated in *Cash Currency,* "[t]he starting point in this analysis is a comparison of the powers conferred upon or withheld from the entity with the powers conferred upon or withheld from entities excluded under section 109(b)(2)." *Id.* For this inquiry, we search for the "essential attribute" of the excluded entity. Other factors in the equivalency analysis are the degree of state regulation of

---

**7.** To say that an HMO not licensed under the Insurance Code cannot underwrite pure indemnity insurance is not entirely accurate. HMOs generally must indemnify health care costs for out-of-area or emergency services. 215 ILCS 125/2–3(f); *see Loyola Univ. Medical Ctr. v. Med Care HMO,* 180 Ill.App.3d 471, 129 Ill.Dec. 360, 361 n. 1, 535 N.E.2d 1125, 1126 n. 1 (1st Dist. 1989). Moreover, nearly every HMO to some extent "indemnifies" an enrollee's health care costs by paying for care rather than providing it directly. Indeed, two-thirds of Medcare's health care costs took the form of compensation to providers, while only one-third of its costs involved the provision of benefits in kind at its four clinics. And in any event, the distinction between cash indemnification and provision of service in kind is not, from the perspective of enrollees, very marked. The enrollees' health care costs are met by the organization in question under either scenario.

the entity involved, the existence of a state statutory scheme for liquidation or rehabilitation and the public or quasi-public nature of the business. *Id.*

Medcare contends that it is not the substantial equivalent of an insurance company under Illinois law because its powers and functions differ substantially from those of an insurance company. It relies on *Family Health*, 104 B.R. at 274–75, where the bankruptcy court for the Central District of California determined that the Midwest affiliate of a national network of HMOs was not an insurance company under Illinois law. Applying the equivalency analysis, it found that the essential attribute of an HMO under Illinois law was its role in providing medical services. Because insurance companies do not perform this function, the bankruptcy court held that HMOs were not the substantial equivalent of insurance companies.[8] Medcare also emphasizes the fact that, unlike insurance companies and those HMOs licensed as insurance companies, it cannot sell simple indemnification insurance.

We accept the thrust of Medcare's argument: The powers and functions of HMOs are not coextensive with those of traditional insurance companies under Illinois law. The HMO Act defines an HMO as:

> any organization formed under the laws of this or another state to provide or arrange for one or more health care plans under a system which causes any part of the risk of health care delivery to be borne by the organization or its providers.

215 ILCS 125/1–2(9). A "health care plan" is defined as:

> any arrangement whereby any organization undertakes to provide or arrange for and pay for or reimburse the cost of basic health care services from providers selected by the Health Maintenance Organization and such arrangement consists of arranging for or the provision of such health care services, as distinguished from mere

indemnification against the cost of such services, except as otherwise authorized by Section 2–3 of this Act, on a per capita prepaid basis, through insurance or otherwise.

215 ILCS 125/1–2(7). Although we question whether the *actual provision* of health care is an essential function of HMOs, it is clear from the preceding definition that the *arrangement* or *management* of health care is a basic attribute of an HMO under section 1–2(7): But for the arrangement of care, an HMO would be simply a health insurance company providing mere indemnification benefits.[9] Nonetheless, it is also true, and Medcare conceded as much during argument, that an essential attribute of an HMO under section 1–2(9) is its insurance component: But for the insurance function, an HMO would be simply a health care provider. Given its hybrid nature, Medcare underscores the attribute not found in the excluded entity to insist that it does not share the essential attribute of insurance companies. In determining equivalency for purposes of section 109(b)(2), however, the issue is not whether the excluded entity mirrors the entity in question, but rather whether the two entities share the attribute prompting exclusion under section 109(b)(2). *Beacon Health*, 105 B.R. at 180. The essential attribute of an insurance company under Illinois law, and the attribute prompting deference to state regulation, is the assumption of a third party's risk for a premium. *Griffin Sys., Inc. v. Washburn*, 153 Ill.App.3d 113, 106 Ill.Dec. 330, 333, 505 N.E.2d 1121, 1124 (1st Dist. 1987); *accord Royal Drug*, 440 U.S. at 211, 99 S.Ct. at 1073. Medcare shares this attribute, which is the pivotal factor in the equivalency analysis.

As to the other factors to be considered in determining whether an entity is the equivalent of one excluded under section 109(b)(2), HMOs are subject to extensive state regulation. Medcare counters that HMOs are subject to a different regulatory regime than

---

8.  As noted, *supra* note 1, this decision and others similarly decided by the bankruptcy court are of questionable authority given the district court's reversal in a related case. *Family Health*, 143 B.R. at 235.

9.  In fact, however, the differences between "traditional health insurance companies" and HMOs are even more elusive because traditional companies are also beginning to arrange and manage care through preferred provider organizations.

insurance companies because they are regulated under the Illinois HMO Act and not the Insurance Code.[10] But this distinction indicates only that the regulation of HMOs and the regulation of insurance companies under Illinois law are not identical. What is relevant for purposes of the equivalency inquiry is the *degree* of state regulation. The more extensively an entity is regulated under state law, the stronger the state interest and the more likely it is that Congress intended to exclude the entity from bankruptcy relief and leave to the states the business of winding up. *See Cash Currency*, 762 F.2d at 551. And to the extent that *similarity* of regulation is relevant, we note that HMOs are subject to numerous provisions comparable or identical to those in the Insurance Code,[11] and—most importantly—are subject to the same procedures for liquidation and rehabilitation. *See id.* at 548 (express state liquidation and rehabilitation procedures itself a factor in the equivalency analysis); 1978 U.S.C.C.A.N. at 5817 (entities are excluded in section 109(b)(2) because "they are bodies for which alternative provision is made for their liquidation under various State or Federal regulatory laws.").

Finally, we recognize the public or quasi-public nature of HMOs. Naturally, the fact that an entity is subject to extensive state regulation and statutory liquidation and rehabilitation procedures is initial evidence of an entity's public nature. Moreover, the purpose of this regulation, as is the purpose of the regulation of all the entities excluded under section 109(b)(2), is to ensure their stability and to protect those who deal with them. *Cash Currency*, 762 F.2d at 551 (quoting *Woolsey*, 74 F.2d at 337). That the business of HMOs is affected with a public

interest cannot seriously be questioned given the lengths to which the state of Illinois has gone to protect the interests of HMO enrollees.

Consequently, under Illinois law we not only find that HMOs are classified explicitly as insurance companies excluded from bankruptcy protection, but that HMOs are also the substantial equivalents of domestic insurance companies. We therefore turn next to the consistency of this classification with the policy of the Code.

### B.

██ This inquiry need not detain us long. For once a court has determined that an entity is the substantial equivalent of an excluded entity, it has taken a highly significant step in showing an intent to exclude the entity from the protection of the Code. Medcare makes two arguments suggesting that the classification of HMOs as insurance companies is inconsistent with the Code. First, it contends that Congress did not include HMOs in the list of entities excluded under section 109(b)(2) and, hence, that their classification as excluded entities would contravene congressional intent. As indicated, however, this argument simply begs the question whether an HMO is excluded as a "domestic insurance company." *Family Health*, 143 B.R. at 236. Medcare next suggests that deference to state classification frustrates the policy of uniformity of the bankruptcy laws, relying principally on *International Shoe Co. v. Pinkus*, 278 U.S. at 265, 49 S.Ct. at 110. In *Pinkus*, the Supreme Court held that an Arkansas insolvency law was superseded by the Bankruptcy Act. The Court noted the general rule that congressional intent to preempt the states would not

---

**10.** In *Family Health*, the bankruptcy court emphasized that insurance companies and HMOs are regulated under separate chapters of the Illinois statutes. 104 B.R. at 274. Under the recent compilation, however, Illinois has united the Insurance Code and the HMO Act in its chapter on Insurance.

**11.** HMOs are expressly subject to many provisions of the Insurance Code. *See* 215 ILCS 125/5–3 (subjecting HMOs to 31 sections and six complete Articles of the Insurance Code). Moreover, much of the regulation in the HMO Act

parallels that found in the Insurance Code. For example, HMOs are regulated with respect to financial matters, §§ 125/1–3, 125/2–2, 125/2–4, 125/2–6, 125/2–9, 125/3–1; specific transactions, §§ 125/4–12, 125/5–3; advertising, § 125/4–7; claim practices, § 125/4–2 thru 125/4–5; and mandatory coverage provisions, §§ 125/4–6.1, 125/4–8, 125/4–9. HMOs must also submit annual reports and coverage forms to the Director, §§ 125/2–7, 125/4–13, 125/4–14, who is granted extensive powers to examine, regulate, suspend and revoke the authority of HMOs, §§ 125/5–3, 125/5–4, 125/5–5, 125/5–7, 125/5–9.

be implied without congressional action plainly conflicting with state regulation. It then stated:

In respect of bankruptcies the intention of Congress is plain. The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national Act is in force.

*Id.* Medcare seizes upon this language and contends that separate state and federal liquidation and rehabilitation schemes, potentially entailing different orders of priority among creditors, conflict with the interest in a uniform national bankruptcy law. This argument, however, is without merit. It is well within the province of Congress to "recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States." *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918); *see also Butner,* 440 U.S. at 54–55, 99 S.Ct. at 917–18. Section 109(b)(2) itself demonstrates Congress's intent to defer to the states the winding up of some entities. Moreover, the Supreme Court has recently held that states may give priority to policyholders different from that given under the federal priority statute. *Fabe,* —— U.S. at ——, 113 S.Ct. at 2208–2210. Congress was certainly aware of the potential for inconsistent insolvency regimes, but obviously concluded that the interest in continuing state regulation into insolvency outweighed any interest in uniformity. We will not second guess that determination.

### IV.

Accordingly, we conclude that HMOs are classified as insurance companies under Illinois law and that this classification does not frustrate, and is not inconsistent with, the policy of the Bankruptcy Code. The district court's order dismissing Medcare's chapter

11 petition for want of jurisdiction is, therefore,

AFFIRMED.